W. G. BIRDSALL, Appellee, v. PERRY GAS WORKS et al., Appellants.

**CONTRACTS:** Construction—Construction Leading to Impossibility
1 of Performance. The practical impossibility of complying with a contract, provided an asserted construction of an *ambiguous* clause is adopted, furnishes persuasive reason for rejecting such construction.

> PRINCIPLE APPLIED: A contract provided that certain brick should be "of the best common brick, hard, * * * thoroughly well burned, all picked for even color on both the inside and outside face." It was contended that the reference to color called for *absolute evenness of color.* The evidence showed that it was practically impossible to obtain such evenness of color in "common" brick. *Held,* the contention must be rejected—that the contract called for as near evenness of color as was possible.

**CONTRACTS:** Breach—Estoppel to Plead. One may not, expressly
2 or impliedly, consent that a contractor, in the construction of a building, might use certain material which the *contractor* claimed was in compliance with the contract, and thereafter maintain a plea of breach of the contract by reason of the use of said material.

**APPEAL AND ERROR:** Parties Who May Allege Error—Non-In-
3 terested Party. An appellant may not complain that damages asked by, and allowed to, him were apportioned to different non-complaining defendants.

**CONTRACTS:** Breach—Failure to Perform by Stipulated Time—Jus-
4 tification. One who agrees to perform by a stipulated time, "*subject to causes beyond* his control," may justify a failure to so perform by a showing that, with due diligence on his part, a dealer who had a monopoly of a necessary article was the cause

of the delay, along with the delay of other independent contractors.

CONTRACTS: Performance or Breach—Architect's Certificate of Performance—Waiver—Mechanics' Lien. An owner who, in an action by a subcontractor to foreclose a mechanics' lien, fully adjudicates, with the principal contractor, his liability to such principal contractor, *without asserting the defense that the architect had never certified to the performance of the contract* as therein provided as a condition to payment, thereby precludes himself from asserting such lack of certification in abatement of the subcontractor's action, it appearing that said owner was owing the non-appealing principal contractor more than the amount due the subcontractor.

*Appeal from Dallas District Court.*—W. H. FAHEY, Judge.

FEBRUARY 14, 1917.

REHEARING DENIED DECEMBER 14, 1917.

SUIT by a subcontractor to foreclose a mechanics' lien. The original defendants in the case were the property owner and the principal contractor. There was a decree for plaintiff, and the defendant owner has appealed.—*Affirmed.*

*Read & Read,* for appellants.

*H. S. Dugan, Dingwell & Clarke,* and *White & Clarke,* for appellees.

EVANS, J.—1. The pleadings cover 50 pages of the abstract, and we shall not attempt to set them out in any detail. The defendant Reed, operating under the trade name of Perry Gas Works, is the owner of the property, and the principal defendant. The Western Gas Construction Company is the principal contractor. It appears from the pleadings that, on June 26, 1913, the principal defendant, who will hereinafter be referred to as "the owner," entered into a contract with the Western Gas Con-

1. CONTRACTS: construction: construction leading to impossibility of performance.

struction Company, hereinafter referred to as the principal contractor, for the construction of a gas plant at Perry, Iowa, for a consideration of somewhat more than $13,000. On the same day, the principal contractor entered into a contract with the plaintiff for the performance of a part of its contract for an agreed consideration of somewhat more than $4,600. That part of the contract undertaken by the plaintiff consisted in the main of the erection of the building proper. In the course of the performance of his contract, the plaintiff received, in round numbers, $2,200. There is no dispute that he would be entitled to receive something more than $2,400 in addition, unless he is precluded therefrom on some of the grounds indicated in the answer of the owner defendant. In the main, the claim for the owner defendant is that the plaintiff failed to perform his contract in respect to certain specifications set forth in the answer. These specifications are made the basis of a counterclaim against the plaintiff for $1,700. The breach pleaded is based upon the contract between the owner and the principal contractor, and a cross-petition also was filed against the principal contractor for the same amount. There is no dispute that, subject to the rights of the plaintiff and to the counterclaim, there was due and owing to the principal contractor from the owner somewhat more than $2,800. The specifications of breach of contract made by the defendant owner, both in the counterclaim against the plaintiff and in his cross-petition against the principal contractor, his codefendant, were as follows:

"(a) The brick were not selected for even color; (b) the work was not a neat struck joint; (c) the openings over the doors and windows were not carried through the walls; (d) the walls were not carried to the roof; (e) the job as a whole was not a good, workmanlike job; (f) the contract was not completed by November 10th, according to contract."

In explanation of the specifications, it may be noted that the subcontract called for the erection of a brick building, and contained the following proviso:

"That the walls will be built of the best common brick, hard, square and thoroughly well burned, all picked for even color on both the inside and outside face; no soft or salmon brick to be used anywhere in the work; all to be finished inside and out with a neat struck joint."

The foregoing quotation from the contract furnishes the basis of Specifications "a" and "b." Upon these specifications, damages are claimed to the amount of $1,000. A claim of $600 of damages is based upon Specification "f." The contract provided for the completion of the contract on November 10th, and for liquidated damages of $10 a day for the period of delay. These three specifications present the principal part of the defendant owner's claim, so far as the merits of the controversy are concerned.

As to the merits of these specifications, the question is largely one of fact, upon a record presenting much conflict in the testimony. As bearing upon these particular specifications, the contract between the owner and the principal contractor and that between the principal contractor and his subcontractor, the plaintiff, were in substantial accord.

Turning our first attention to Specifications "a" and "b," the trial court found substantial compliance by the plaintiff with the contract, and found further that, if the defendant had at any time a possible ground of complaint at this point, it had been waived by the conduct of the owner's agents while the contract was in course of performance. The trial court made his finding in writing. The following was his finding upon this branch of the case:

"The brick that were in fact used complied with this specification in all particulars, with the possible exception as to evenness of color; in fact, aside from color, it is doubtful if there is a better brick to be had in the entire state;

they are a shale brick, and were burned to a high degree of hardness, and were well made as to being square and regular. This conclusion I reach from an examination of the three brick which were offered in evidence upon the trial, and from these brick it appears that, in burning, the excessive heat causes a whiteness to appear in spots upon the face of the brick. Whether this is permanent or will disappear with use is not made clear from the testimony. The consulting engineer, Mr. Miller, in one of his letters refers to the fact that possibly in time this whiteness will disappear. Were it not for this whiteness, the brick would be of even color, being red. When the evidence that was offered in this cause is considered, it appears great disagreement exists between contractors and builders and brick makers, not only as to what is even-colored brick, but what are hard brick, and what are common brick; and if all of the testimony offered be true, or anywhere near true, it can be readily understood why a contractor would have difficulty in complying with a specification such as the one in the contract in question. Samples of brick from various yards were offered in evidence upon the trial, all claimed to be hard, common brick. Some were sand brick, an examination of which would lead the uneducated to conclude at a glance that they were not hard brick, and should not be so considered; but yet men who should know have testified that they are hard brick, and would comply with the specification in question. Other witnesses classify brick, as to common brick, as including pressed brick and face brick,—in fact it seems from some of the testimony as though most any quality of brick could be required under a specification such as the one in the contract in question. I call attention to this disagreement between brick men as showing the difficulty the court has in interpreting the specifications, for the purpose of ascertaining what the plaintiff had in fact agreed to furnish. That plaintiff agreed to furnish the best quality

of common brick is conceded; that they must be hard and square and thoroughly burned is also conceded. The brick furnished complied with these requirements. It is only the part 'picked for evenness of color on inside and outside face' that is questioned. Should the court hold this to mean that there must be absolute evenness of color? If such be the case, then the court should supply, in lieu of the expression used, the expression: All brick to be of even color on inside and outside face. This I think is an un-. reasonable construction, in view of the character of brick being used. Defendant was building a gas plant for the manufacture of gas; he was specifying the use of common brick; and the preponderance of the evidence shows that it is difficult, if not impossible, to get evenness of color in common brick, so the expression is used that they are to be picked to produce evenness of color; that is, I think the reasonable construction would be that, in view of the character of the brick to be used, that they should be selected with a view of obtaining as near evenness of color as is possible. It is known of all men, of course, that brick are of different colors, and to avoid the possibility of the use of different colored brick, the clause in controversy was inserted in the specifications, thereby preventing the use of different colored brick in the construction of the inside and outside face. A number of witnesses were offered on the part of the plaintiff who testified that the brick were of even color for common brick. Against that, defendant offered several witnesses who testified that the brick were not of even color. It is impossible for the court to harmonize this testimony, for all of the witnesses offered on either side are men who should know about building material, and about what the requirements of the specifications mean. Under this situation of the record, I am led to conclude that the brick that were in fact used are a substantial compliance with the specifications. And if this be not so, I am very

much inclined to believe that defendant has
waived his right to complain of said brick.
The defendant Gas Company is a going com-
pany, and in the management and conduct
of its business, it has a manager at Perry, one Mr. Ingle,
who was present at the building frequently during its con-
struction, and who was making frequent reports to John
A. Reed, the defendant. He knew that the brick in ques-
tion were being used, and I think it only a fair conclusion
to say that thereby the defendant, John A. Reed, knew
the brick in question were being used. The consulting
engineer, Thomas D. Miller, saw the brick before they were
placed in the wall, and, while he made some complaint
about the same not being of even color, he did not forbid
the use of said brick, but on the contrary said, and so
notified the defendant Construction Company, that the
brick would undoubtedly be acceptable if given a stain. It
also appears from the testimony of the plaintiff that he was
informed by Mr. Ingle that Mr. Reed desired the opinion
of Proudfoot & Bird, and accordingly their opinion was
taken, and they approved of the use of the brick in a let-
ter to Mr. Reed, a copy of which letter was furnished
to Mr. Birdsall; and at no time from the time of the
conversation had with Thomas D. Miller, before the walls
were constructed, was Mr. Birdsall advised by anyone act-
ing for the defendant Gas Company that the brick he was
using would not be accepted. While it is no doubt true
that it was the duty of Birdsall to select brick that did
comply with his contract, but his having selected a brick
which he claimed as being in compliance with his contract,
the defendant should not be permitted to stand by and per-
mit the use of such brick and make no complaint thereof
until the building had been completed and the machinery
installed and the defendant in possession and in operation
of such plant. This to me seems very inequitable and un-

**2. CONTRACTS:**
breach: es-
**toppel** *to*
plead.

reasonable. I do not overlook the fact that defendant denies the knowledge, and denies the authority on the part of Miller and on the part of Ingle, and on the part of Proudfoot & Bird, but such a conclusion is not supported by the circumstances."

The foregoing is a fair analysis of the evidence bearing upon these specifications. On August 4th, before the laying of the wall had begun, Mr. Miller, the consulting engineer, wrote as follows to the principal contractor:

"I had an opportunity to inspect a carload of brick that was on the ground for the building. These bricks were excellent in quality, but it will prove difficult to select face brick on account of these bricks having been burnt with gas and are streaked, nearly all of them showing two white streaks across the face of the brick, about an inch wide. I am submitting this question to Mr. Reed, asking him to express himself in regard to same. I understand that this brick will bleach out in the course of a couple of years, and become practically uniform color. This I am not certain of, and would not accept the brick on that supposition. I believe that this matter could be satisfactorily disposed of if the contractor would give a red stain to the wall, after finished, in order to give it a uniform color."

On August 8th, he wrote again to the principal contractor, in reply to a letter of August 5th, as follows:

"If a coat of red stain should become necessary to make the brick offered acceptable, it will have to be at the contractor's expense."

The architects of the building wrote to the owner as follows:

"Mr. W. G. Birdsall, of Perry, Iowa, has asked us to give you our opinion of the Shackelford brick. We think you cannot have a better brick unless you buy a paver, and a paver is not as satisfactory for building purposes."

The contents of all these letters were made known to the plaintiff and made the basis of an insistence by the principal contractor that he begin the construction of the wall at once. On August 25th, Miller wrote to the principal contractor as follows:

"I am just in receipt of yours of the 23d through Mr. Sweeney. I have expressed myself to Mr. Sweeney fully in regard to the brick work. I was in hopes of seeing some of the brick in the wall when I got here today, feeling very much as you do that the effect is going to be very satisfactory; but I have told Mr. Sweeney that he should warn Mr. Birdsall that any delay that he may indulge in on account of the brick will be held against him on account of demurrage resulting from his delay. I have no expression from Mr. Reed as to the brick, and, as Mr. Birdsall says this is the best he can do, he apparently is going ahead with the work as soon as the bars arrive."

It does appear from the evidence that Reed did object, both to Miller and to his architects, as to the color of the bricks in question, but this fact was not brought to the attention of the plaintiff in any way.

The question as to the "even color" of these bricks was, in its very nature, a rather indefinite one. This much, at least, appears from the record. Many witnesses of experience in the subject testified that these bricks were of even color, and other witnesses of equal experience testified to the contrary. It was a reasonable course on the part of the plaintiff to exhibit his bricks before beginning his wall, and to ask for an expression thereon. The letters of Mr. Miller which appear in evidence are strongly corroborative of the claim of the plaintiff that he assented to their use as complying with the contract, subject to the possibility that a little staining might be necessary. We think the conclusions of the trial court should be sustained at this point.

As to Specifications "c" and "d," the

**3. APPEAL AND ERROR: parties who may allege error: non-interested party.**  trial court allowed damages to the amount of $50 on each item, as against the principal contractor, and one of such items as against the plaintiff. Unless it should be found that the decree was erroneous in other respects, the appellant has no interest in the question whether both items should have been allowed against the plaintiff instead of one. The appellant is fully protected by the allowance made as against the principal contractor.

Specification "f" presents the only other

**4. CONTRACTS: breach: failure to perform by stipulated time: justification.**  considerable item. There was a delay in the completion of the contract. A qualified possession of the building was given to the owner sometime in December, but the contract was not fully completed until sometime in January. The contract called for liquidated damages of $10 a day, and there is evidence tending to show that this was approximately the rate of damage that the owner sustained by reason of the delay. The plaintiff pleaded a justification for the delay, in that it resulted from causes over which he had no control. The plaintiff's contract called for a completion of his work by October 8, 1913. Section 1 of his contract, however, contained the following proviso:

"Subject as to time of completion to strikes, fires, freight blockades, and any other cause beyond his control."

The contract between the owner and the principal contractor contained a like provision. The contract called for the use of a certain specified make of roofing. This roofing, so provided for, was made by one manufacturer only. The plaintiff immediately ordered the necessary roofing from such manufacturer through its appropriate channels. His order was accepted on July 24, 1913, for immediate delivery. The evidence is abundant that he used all diligence of importunity after he failed to receive the same within a

reasonable time following the order. He did not receive the same until the latter part of October or early November. In. order to enable an independent contractor to perform his part of the work, the plaintiff covered the building with a temporary roof, and had the same ready for such independent contractor on October 9th. Such contractor, however, delayed his coming for a considerable period after that date, and this delay contributed substantially to the final delay in the completion of the job. We think that the evidence fairly sustains the plaintiff's claim that the delay did result from causes over which he had no control. So far, therefore, as the merits of the controversy are concerned, we think the finding of the trial court must be sustained in its entirety.

5. CONTRACTS: performance or breach: architect's certificate of performance: waiver: mechanics' lien.

2. There is another question, however, which has its importance,.and. which is put forward by the appellant as decisive. The contract between the appellant and his principal contractor provided that the certificate of Miller, the consulting engineer, should be made conclusive of all matters of dispute, either as to the construction of the contract or the amount due thereunder. It appears also that no certificate was ever made by Miller, and none was ever requested by either party. It is urged that the plaintiff cannot maintain his action without first obtaining a certificate from Miller in support of such action. The question is complicated somewhat by the fact that such proviso for a certificate was not contained in the contract between the plaintiff and the principal contractor. It is properly contended by the appellant that he was entitled to a performance of the contract entered into between him and his principal contractor, and that his property could not be subjected to a mechanics' lien in violation of such contract. On the other hand, the plaintiff was entitled to maintain his action at least against the principal con-

tractor, regardless of the contract between the principal con-
tractor and the owner. If the plaintiff's action had been
dismissed on this ground as against the defendant owner, the
dismissal would have been in abatement only. It would
not have settled the merits of the controversy. The trial
court found that this provision was waived by the con-
duct of the defendant owner, in that, in the correspondence
had by and on behalf of the plaintiff with the owner, the
refusal to pay was never based upon such ground, but was
based specifically upon other grounds. The trial court
found also that the owner invited the plaintiff to file a lien
and bring an action in order to determine the controversy
between them which was indicated in the correspondence
along the lines of the specifications which we have set forth
in the preceding paragraph. Without passing on the sound-
ness of the trial court's reasoning at this point, we think
the record discloses another quite conclusive reason why
this contention cannot be sustained. The plaintiff brought
his action against both defendants, namely, the owner and
the principal contractor. The owner not only filed a count-
erclaim against the plaintiff for damages of $1,700 for his
failure to comply with the provisions of the contract, but
he also filed a cross-petition against his codefendant, the
principal contractor, claiming the same damages. The
principal contractor answered this cross-petition, denying
the same and asking for a recovery of the balance due it
from the owner of the property over and above the amount
of such lien which might be found in favor of the plaintiff.
In the issue thus made between the two defendants, the
initiative was taken by the defendant owner. No question
was raised by either defendant as between themselves con-
cerning the absence of a certificate by the consulting engi-
neer. The issue was fully tried between the two defendants.
The trial court found that the defendant owner was indebt-
ed to the principal contractor in a sum somewhat over

$2,800. It found also a lien in favor of the plaintiff for approximately $2,400. The form of the decree fully protected the defendant owner against double liability.

If we were to hold, therefore, that the action of plaintiff should be abated for want of the certificate of the engineer, this would not nullify the adjudication had between the two defendants. The defendant owner would still be owing to the principal contractor $2,800. The principal contractor is not objecting to that part of the decree which awarded $2,400 of such sum to the plaintiff. Clearly, it is a matter of indifference to the defendant owner how the judgment for $2,800 may be distributed between the other claimants. It is true that the plaintiff asked for a lien upon the owner's property, but the codefendant, the principal contractor, asked for a lien, also.

In view, therefore, of the final adjudication on the merits thus had between the two codefendants, the defendant owner has wholly lost his interest in the right of abating the action of the plaintiff. The litigation of the issue between him and his codefendant necessarily involved the substantial rights of the plaintiff, and of necessity, we think, waived a mere question of abatement of the plaintiff's original petition. The defendant owner's cross-petition and counterclaim were directed against the plaintiff and the principal contractor jointly. The same damages were claimed from both, and were based upon the same breach. The plaintiff answered the counterclaim. If his petition had been abated, he was still in court defending the counterclaim. The adjudication on the counterclaim settled the merits of the controversy, so far as the defendant owner is concerned. Upon the findings made, his codefendant was entitled to affirmative relief under the prayer of his answer to the cross-petition. That being established, only the principal contractor was affected by the affirmative relief granted to the plaintiff under his petition. Of course,

if grounds of reversal were shown as against the principal contractor, a very different situation would be presented.

To put it another way, the two defendants, being the parties to the original and principal contract, fully litigated the merits of the controversy involving the alleged breach of such contract. Such litigation as between them was had upon the initiative of the appellant. No question was raised by either of them, as between themselves, as to the lack of certificate of the consulting engineer. As between themselves, therefore, they waived it. Having thus waived it as to the principal contractor, can the appellant insist upon it as to the subcontractor, as a ground of abatement of his action? The subcontractor claims from the appellant through and under the principal contractor. His rights can rise no higher than those of the principal contractor. On the other hand, the rights of the appellant, as against the subcontractor, can rise no higher than his rights against the principal contractor. Having fully waived the certificate requirement as to the principal contractor, he has necessarily waived it as to the subcontractor. Inasmuch as we find no ground of reversal upon the merits as between the appellant and his codefendant, the principal contractor, the affirmance of the adjudication between them becomes conclusive. The indebtedness found due from the appellant to the principal contractor is substantially larger than the recovery allowed to the plaintiff. The amount of plaintiff's recovery, therefore, works no prejudice to the appellant. Only the principal contractor is interested in reducing the same. If it should be reduced, or the petition wholly abated, it would not reduce the amount adjudicated as due from the defendant upon the principal contract. The amount allowed the plaintiff is deducted from the amount otherwise found to be due the principal contractor. The principal contractor is not complaining of the award made to the plaintiff. It is clear, therefore, that the appellant has

no remaining interest in a mere abatement of plaintiff's petition.

The decree entered below is, therefore,—*Affirmed.*

LADD, WEAVER and PRESTON, JJ., concur.